******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

D'AURIA, J., concurring. I agree with and join parts I and II of the majority opinion. I also agree with and join part III A and B, which concludes that the trial court did not violate (1) General Statutes § 54-84 (b) by denying the request by the defendant, Michael T., to instruct the jury that it could draw no unfavorable inference from his "elect[ion]" not to testify, rather than his "failure" to testify, or (2) his exercise of his constitutional right to remain silent by concluding that the same statute required the trial court to instruct the jury that it could draw "no unfavorable inferences from the accused's *failure* to testify." (Emphasis added.) General Statutes § 54-84 (b). I write briefly and separately because I believe the court's resolution of the defendant's "no unfavorable inference" claims leaves in its wake confusion for trial courts. I respectfully suggest that the legislature consider clarifying whether it intended for courts to use any particular language—including the phrase, "failure to testify"—when giving this legislatively and constitutionally compelled instruction.

The trial court in the present case believed it was required to use the language of the statute ("failure to testify") or risk committing plain error. The court today properly disabuses trial courts of that notion. The majority opinion contains four predicates, which I agree are accurate under our law. First, "a defendant may request, and the trial court may give, a jury instruction that deviates from the specific wording of § 54-84 (b), as long as the instruction does not materially alter the substantive meaning of the statute." Second, the trial court is not *required* to grant a defendant's request for a particular alternative instruction but may give any instruction that accurately states the law. Third, § 54-84 (b) requires the trial court to grant a defendant's request that the court give no instruction concerning the defendant's failure to testify. See *State* v. *Casanova*, 255 Conn. 581, 600, 767 A.2d 1189 (2001). And, fourth, in the absence of a request not to give an instruction at all, the failure to give a "no unfavorable inference" instruction pursuant to § 54-84 (b) is plain error. *State* v. *Wright*, 197 Conn. 588, 595, 500 A.2d 547 (1985).

Even when considering these axioms together, there remains to me something incongruous. Specifically, the majority agrees with the defendant, as do I, that the statutory phrase "failure to testify," while violating no constitutional rule, nonetheless has "the tendency to *confirm* the validity of the jury's natural assumption that an innocent person would take the [witness] stand to respond to the accusations against him." (Emphasis in original.) The majority even goes so far as to "agree with the defendant in the present case that the use of

more neutral language, such as 'the defendant's choice not to testify,' or 'the fact that the defendant did not testify,' would be preferable," and states that "it is well within the trial courts' discretion to use this alternative language, and we encourage them to do so." The majority also notes and encourages use of the Judicial Branch's model criminal jury instructions, which provide in relevant part: "The defendant has not testified in this case. . . . You must draw no unfavorable inferences from the defendant's *choice not to testify*." (Emphasis added.) Connecticut Criminal Jury Instructions 2.2-4, available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited April 22, 2021). The majority goes so far as to say: "[W]e can perceive no reason why the legislature would have wanted to bar trial courts from deviating from the specific language of the statute when instructing the jury, as long as the courts give an instruction that is at least as protective of the defendant's constitutional right as the statutory language."[1]

So, where does this leave our trial courts? If it is plain error to give no instruction even without a request, presumably, trial courts should have a canned instruction to give in every case in which a defendant does not testify. Should courts default to use of the statutory language? The majority's answer appears to be that they can, but they don't have to. The majority's answer is the same when a defendant proposes language that departs from the legislative language: courts may depart but don't have to.

Although we might be able to envision examples of a defendant who wishes for a trial court to use the statutory phrase, "failure to testify," in its instruction, it is not apparent to me under what circumstances the court could appropriately exercise discretion to *decline* to use alternative language that we have recognized not only as valid, but preferable. In fact, it is significant to me that a committee of the Judicial Branch's criminal trial judges, presumably after careful consideration of the statutory language, has proposed a model instruction that deviates from the statute's language and that we encourage trial courts to use: "The defendant has not testified in this case. . . . You must draw no unfavorable inferences from the defendant's *choice not to testify*." (Emphasis added.) Connecticut Criminal Jury Instructions, supra, 2.2-4. It is also significant to me that the state has voiced no objection to the language in the model instruction.

We could adopt this language, or any other "neutral" or "preferable" language, as a matter of our supervisory authority over the administration of justice. "We ordinarily invoke our supervisory powers to enunciate a rule that is not constitutionally required but that we think is preferable as a matter of policy." (Internal quotation marks omitted.) *Marquez* v. *Commissioner of Correction*, 330 Conn. 575, 608, 198 A.3d 562 (2019).

We have exercised this authority to "[adopt] rules intended to guide the lower courts in the administration of justice in all aspects of the criminal process"; (internal quotation marks omitted) *State* v. *Rose*, 305 Conn. 594, 607, 46 A.3d 146 (2012); including numerous times to direct trial courts to instruct or not to instruct juries in certain ways. See, e.g., *State* v. *Carrion*, 313 Conn. 823, 852–53, 100 A.3d 361 (2014); *State* v. *Aponte*, 259 Conn. 512, 522, 790 A.2d 457 (2002); *State* v. *Delvalle*, 250 Conn. 466, 475–76, 736 A.2d 125 (1999). The present case seems to fit the bill: the statutory language does not violate the constitution, but the majority considers other language preferable as a matter of policy. It would be odd if the court's reticence to exercise such authority in the present case and adopt particular language—the committee's model instruction or otherwise—stemmed from an unwillingness to deviate from the legislature's language because we have in our opinion today encouraged trial courts to do exactly that.

I assume instead that our reluctance derives from the fact that the defendant has not specifically asked that we exercise our supervisory authority. Ultimately, it is for this reason that I do not dissent from the majority's election not to employ its supervisory authority to put its imprimatur on the committee's language or direct particular language. Instead, I humbly suggest that a signal from the legislature after its consideration of the statutory language would be useful so that courts might better understand the extent to which the legislature is wedded to any particular language.

I therefore respectfully concur.

[1] The majority even overrules cases that have "previously held that a minor deviation from the specific wording of § 54-84 (b) is improper, even if the instruction does not alter the substantive meaning of the statute . . . ." (Citations omitted.)